```
 1  LUBIN & ENOCH, P.C.
    Nicholas J. Enoch
 2  State Bar No. 016473
    Jarrett J. Haskovec
 3  State Bar No. 023926
    349 North Fourth Avenue
 4  Phoenix, Arizona 85003-1505
    Telephone: (602) 234-0008
 5  Facsimile: (602) 626-3586
    E-mail: nicholas.enoch@azbar.org
 6
    Attorneys for Plaintiffs
 7
```

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Rogelio Rocha, Jose Alvarez, Antonio de la Rosa, Jesus de la Rosa, Marcelino Galvan, Demetrio Gonzalez, Alejandro Guillen, Efrain Jimenez, Aurora Lugo, Chano Nino, Humberto Perez, and Fernando Zaragoza,<br><br>    Plaintiffs,<br><br>v.<br><br>Salomon and Mary Diaz, husband and wife; and 4-Seasons Drywall, an Arizona Limited Liability Company,<br><br>    Defendants. | No.<br><br><br><br><br><br><br><br><br><br>**COMPLAINT** |

**NOW COMES**, the Plaintiffs Rogelio Rocha ("Rocha"), Jose Alvarez ("Alvarez"), Antonio de la Rosa, Jesus de la Rosa, Marcelino Galvan ("Galvan"), Demetrio Gonzalez ("Gonzalez"), Alejandro Guillen ("Guillen"), Efrain Jimenez ("Jimenez"), Aurora Lugo ("Lugo"), Chano Nino ("Nino"), Humberto Perez ("Perez"), and Fernando Zaragoza ("Zaragoza") (hereinafter collectively referred to as "Plaintiffs") by and through their attorneys, Lubin & Enoch, P.C., bringing this action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C.

§201, *et seq.* ("FLSA"), and, pursuant to this Court's supplemental jurisdiction set forth at 28 U.S.C. §1367, the Arizona Wage Act, A.R.S. §23-350, *et seq.*, and the Arizona statute governing the issuance of an insufficient funds check, A.R.S. §12-671(A).

This lawsuit is an extreme example of an unscrupulous employer engaging in pervasive wage theft against Arizona's most vulnerable workers.[1]

## INTRODUCTION

1. Plaintiffs are former employees of Defendants Salomon and Mary Diaz (hereinafter collectively referred to as "Diaz Defendants") and their company, 4-Seasons Drywall, LLC ("4-Seasons"). The Defendants provided employment to Plaintiffs at various times between December 2007 and February 2009. Plaintiffs primarily aided in the construction of interior walls and ceilings by hanging drywall and performing other labor while under the control and at the direction of the Diaz Defendants. Plaintiffs allege that Defendants have willfully contravened the right of Plaintiffs to be compensated for all wages and overtime due pursuant to these employment relationships, in violation of, *inter alia*, the FLSA, 29 U.S.C. §§206-207 and the Arizona Wage Act, A.R.S. §§23-351[C] and 363(A).

2. Despite efforts to recover the unpaid wages and overtime, Defendants have willfully disregarded these

---

[1] For an in-depth look into this national epidemic, *see* http://www.unprotectedworkers.org/index.php/broken_laws/index.

2

overtures, steadfastly and obstinately refusing to provide the compensation due Plaintiffs.

**PARTIES**

3. Plaintiffs are all former employees of Defendants as defined in 29 U.S.C. §203(e)(1) and A.R.S. §23-350(2).

4. All of the Plaintiffs, with the exception of Jimenez, reside in Arizona.

5. Jimenez currently resides in Texas but during the relevant period of time, he resided in Arizona.

6. The Diaz Defendants are now, and at all times relevant hereto have been, husband and wife, constituting a marital community under the laws of the State of Arizona. The acts engaged in by the Diaz Defendants were performed as agents of the marital community.

7. Upon information and belief, the Diaz Defendants are residents of Snowflake, Arizona, and have been for all times relevant to this proceeding.

8. Both of the Diaz Defendants are an "employer" as defined in 29 U.S.C. §203(d) and A.R.S. §§23-350(3) and 362(B).

9. 4-Seasons is an Arizona limited liability company with its principal place of business being in Taylor, Arizona.

10. Defendant Salomon Diaz is a member of 4-Seasons.

11. 4-Seasons is an "employer" as defined in 29 U.S.C. §203(d) and A.R.S. §§23-350(3) and 362(B).

12. Upon information and belief, 4-Seasons was not only influenced and governed by the Diaz Defendants, but there was such a unity of interest and ownership that the individuality, or separateness, of the Diaz Defendants and 4-Seasons had ceased to exist.

13. Upon information and belief, the facts are such that an adherence to the fiction of the separate existence of the Diaz Defendants and 4-Seasons would, under these particular circumstances, sanction a fraud or promote injustice.

**JURISDICTION AND VENUE**

14. As to the First and Second Claims for Relief, *infra*, jurisdiction is proper pursuant to 28 U.S.C. §1331.

15. The state law-based claims set forth in the Third, Fourth and Fifth Claims for Relief are properly within this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367.

16. Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

**GENERAL ALLEGATIONS**

17. Plaintiffs allege that Defendants failed to pay all wages due Plaintiffs for construction labor performed for Defendants. Plaintiffs had served Defendants as construction laborers at various times between December 2007 and November 2009.

**Rocha's Claims**

18. Rocha's employment relationship with Defendants began in the fall of 2007 when he was retained by Defendants to complete a drywall project on a new home being constructed in Queen Creek, Arizona (the "Queen Creek Project"). Defendants paid Rocha in full for completion of the Queen Creek Project. While on the Queen Creek Project, Rocha's labor was overseen by, *inter alia*, the Diaz Defendants.

19. Based upon this prior mutually beneficial employment relationship, Rocha agreed to perform similar labor for the Defendants on a new home being constructed on West Country Club Drive in Snowflake, Arizona (the "Snowflake Project") in December 2007. Pursuant to an oral agreement struck in a December 11, 2007, phone conversation between Rocha and Salomon Diaz, Rocha agreed to hang 280 sheets of drywall in return for $1,800 cash at the Snowflake Project. Rocha traveled to Snowflake and commenced performance on December 12, 2007. Subsequently, Salomon Diaz agreed to pay Rocha an additional $218.28 to hang an additional thirty-four (34) sheets of drywall ($6.42 per sheet) that were needed to complete the drywall portion of the Snowflake Project. Rocha performed the agreements in full between December 12 and 18, 2007, and was due a total of $2,018.28. At the Snowflake Project's completion, Rocha was paid a total of $200 in cash by Defendant Mary Diaz and told to await the remainder. Despite repeated attempts by

5

Rocha to collect the unpaid wages, the remaining $1,818.28 has never been paid. The Diaz Defendants visited the Snowflake Project job site every day, overseeing the work of Plaintiff Rocha.

20. During the period Rocha was employed on the Snowflake Project, he worked hours in excess of forty (40) hours during one week. For the work week beginning Monday, December 10, 2007, Rocha worked five (5) days averaging eleven (11) hours of labor each day for a total of fifty-five (55) hours.

### **The Best Western Plaintiffs' Claims**

21. Alvarez, Antonio de la Rosa, Jesus de la Rosa, Galvan, Gonzalez, Guillen, Jimenez, Lugo, Nino, Perez, and Zaragoza (hereinafter collectively referred to as "the Best Western Plaintiffs") were contracted by Defendants to hang drywall in the construction of a Best Western hotel in Mesa, Arizona (hereinafter referred to as the "Best Western Project"), located at the intersection of Warner and Power Roads. The Best Western Plaintiffs were unpaid for work performed at various times between November 2008 and February 2009.

22. Alvarez, Galvan, Guillen, and Zaragoza were all contracted by the Defendants to hang drywall on at the Best Western Project. The work of these four (4) Plaintiffs was controlled and supervised by the Diaz Defendants. These four (4) Plaintiffs worked together under common terms including a common duration of employment from approximately

November 2008 until February 2009 at the Best Western Project. They were compensated by the Defendants for much of the work the group performed prior to January 2009.

23. Beginning in January 2009, however, Alvarez, Galvan, Guillen, and Zaragoza were largely uncompensated for work performed on the Best Western Project. During the period where they provided unpaid labor, they worked under two different compensation schemes. The first was on a piecework basis where the employees were paid $4.32 per sheet of drywall and $1.25 per piece of laminate. Collectively, the four workers hanged 1,072 sheets of drywall, for a total of $4,631.04 owed for the labor performed. Defendants provided $2,000.00 to compensate the workers for the piecework during this period, leaving an unpaid balance of $2,631.04. In addition, these four (4) Plaintiffs collectively installed 120 sheets of laminate, and were to be paid $150 under their agreement with Defendants. Thus, under the piecework compensation structure, the Plaintiffs are entitled to recover $2,781.04 total for unpaid wages, or $695.26 individually.

24. For the period between January 6 and 12, 2009, the workers provided labor to the Defendants on an hourly compensation basis. For the week ending on Sunday, January 11, 2009, Alvarez, Galvan, Guillen, and Zaragoza each worked thirty-nine (39) hours, at a payment rate of $15.00 per hour. The subsequent week, ending January 18, 2009, each worker provided seventeen (17) hours total, also at a rate

7

of $15.00 per hour.  All told, the four Plaintiffs worked fifty-six (56) hours each under the hourly compensation scheme, all of which hours were unpaid by Defendants.  Thus, under the hourly compensation structure, each Plaintiff is entitled to recover $840 or a total of $3,360 collectively.

25.  All told, Alvarez, Galvan, Guillen, and Zaragoza accumulated $6,141.04 in unpaid wages.  Efforts by these four (4) Plaintiffs to recover the unpaid wages have been rejected by Defendants.

26.  Perez contracted with Defendants as a taper at a rate of $120 per day.  Perez performed fifty-three (53) days of work and has never been paid any amount.  (A check remitted to Perez by the Diaz Defendants in the amount of $1,300 was returned unpaid due to insufficient funds.)  Thus, Perez is owed $6,360.

27.  Gonzalez worked as a taper for fifty-three (53) days at a rate of $100 per day on the Best Western Project.  Gonzales was never paid any of the $5,300 owed him by the Defendants.

28.  Jimenez was contracted by the Defendants to hang drywall between October and November 2008 at a rate of $15.00 per hour.  Jimenez worked seven (7) days a week, for ten (10) hours per day for two (2) consecutive weeks and six (6) days a week, ten (10) hours per day, for two (2) additional weeks.  He provided forty (40) hours of labor per week at the regular rate of compensation, and thirty (30) hours per week compensable under the federal overtime rate

of one and one-half times his regular wage rate. For the entire four week period, Jimenez accumulated $2,400 in unpaid wages at the regular $15 per hour rate (160 hours) and an additional $2,250 in wages at the federal overtime rate (100 hours), for a total of $4,650 due. Jimenez received no compensation from Defendants for this labor.

29. Antonio de la Rosa, Jesus de la Rosa and Lugo all worked as tapers in concert with Jimenez during November 2008. Jesus de la Rosa provided fifty (50) hours of labor as a taper on the Best Western Project during one week in November 2008. Defendants promised to pay him $15 per hour, thus a total straight time obligation of $750 accrued in his favor. The Defendants failed to make any payment against this arrearage.

30. Lugo also worked fifty (50) hours on the Best Western Project, in November 2008, at the rate of $15 per hour, and received no compensation from the Defendants. Lugo is due $750 in straight time compensation from Defendants.

31. Antonio de la Rosa was promised payment of $20 per hour for labor provided Defendants at the Best Western site. He also worked a total of fifty (50) hours during November 2008, and was due $1,000 in straight time pay for his labor, but was also never paid by Defendants.

32. Nino provided construction labor to Defendants on multiple occasions. He was hired by Defendants to perform taper services on multiple projects in Arizona, including

the Best Western Project in early 2009. Nino was promised pay of $120 per day, regardless of the number of hours he worked. Nino worked for several weeks and was paid intermittently for the services he performed on the Best Western Project at a rate of $100 per day, until his employment was terminated by the Defendants in February 2009. In the week preceding his termination, Nino had worked seven (7) days, approximately twelve (12) hours per day, but was not paid by the Defendants for this seven (7) day period on the occasion of the termination. His repeated requests for payment of $700 for the pre-termination work period were denied by Defendant Salomon Diaz and he has never been paid.

33. During the entire period of his employment for Defendants, Nino was knowingly under compensated, both for the hours he worked at his regular rate of compensation and for the overtime hours that he accrued on a weekly basis. From the beginning of his employment for Defendants, he was never paid the $120 daily rate promised by Salomon Diaz; he was only paid $100 per day. As for overtime, Nino worked overtime every week he was employed on the project but was never paid the premium rate mandated under the FLSA.

**FIRST CLAIM FOR RELIEF**
**Violation of FLSA Overtime Compensation Standard**

34. Defendants have willfully failed to compensate workers for overtime hours worked by certain Plaintiffs as required under 29 U.S.C. §207. Multiple Plaintiffs are

entitled to receive compensation at a rate of one and one-half times (1½ x) the regular wage rate for any hours worked for the Defendants in excess of forty hours in any week plus liquidated damages pursuant to 29 U.S.C. §216(b).

### SECOND CLAIM FOR RELIEF
**Violation of FLSA Minimum Wage Standard**

35.  Defendants have willfully failed to pay wages due Defendants pursuant to the federal minimum wage law, 29 U.S.C. §206.  Plaintiffs are entitled to recover all unpaid wages and liquidated damages pursuant to 29 U.S.C. §216(b).

### THIRD CLAIM FOR RELIEF
**Violation of Arizona Minimum Wage Act**

36.  Defendants have willfully failed to pay wages at the rate of the Arizona Minimum Wage, in violation of the Arizona Minimum Wage Act, codified at A.R.S. § 23-363(A). Plaintiffs are entitled to recover the balance of the wages owed, including interest thereon, and an additional amount equal to twice the underpaid wages pursuant to A.R.S. §23-364(G).

### FOURTH CLAIM FOR RELIEF
**Violation of Arizona Wage Law**

37.  Defendants have willfully failed to pay wages to the Plaintiffs for labor performed as required pursuant to A.R.S. §23-351[C].

38.  Plaintiffs are entitled to recover treble the amount of wages unpaid under Arizona law pursuant to A.R.S. §23-355(A).

39. As this Court has concluded previously, the treble damages provision set forth in A.R.S. §23-355(A) may be applied to triple a liquidated damages award received under the FLSA pursuant to this Court's supplemental jurisdiction. *Davis v. Jobs for Progress*, 427 F.Supp. 479, 483 (D. Ariz. 1976).

### FIFTH CLAIM FOR RELIEF
### Violation of Arizona's Bad Check Law
### (against Diaz Defendants only)

40. As alleged in ¶26 of this Complaint, the Diaz Defendants willfully made a check to Plaintiff Humberto Perez that was later returned due to insufficient funds and never paid. Pursuant to A.R.S. §12-671, Plaintiff Perez is entitled to recover two times (2x) the amount of the check.

### PRAYER

**WHEREFORE**, Plaintiffs pray that they recover from Defendants the following:

1. An award of unpaid overtime in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. §§207 and 216(b).

2. An award of unpaid minimum wages in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. §§206 and 216(b);

3. An award of liquidated damages regarding ## 1 and 2, *supra*, in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. §216(b);

4. An award of treble the sum of unpaid wages, and liquidated damages set forth in # 3, *supra*, pursuant to A.R.S. §23-355(A);

5. Pre-judgment and post judgment interest on unpaid back wages;[2]

6. An award in the amount of two times (2x) the amount of the bad check tendered to Plaintiff Perez by Defendant Salomon Diaz pursuant to A.R.S. § 12-671;

7. Attorneys' fees pursuant to 29 U.S.C. §216(b), A.R.S. §§12-341.01, 671(A) and 23-364(G);

8. Court costs and costs of litigation pursuant to 29 U.S.C. §216(b) and A.R.S. §§12-341, 671(A) and 23-364(G); and

9. Such other and further equitable relief as the Court deems just.

RESPECTFULLY SUBMITTED this 29th day of September, 2010.

LUBIN & ENOCH, P.C.


s/Nicholas J. Enoch
Nicholas J. Enoch, Esq.
Attorney for Plaintiffs

---

[2] *See, e.g., Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986).

13

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of September, 2010, I electronically transmitted the attached Complaint to the U.S. District Court Clerk's office using the CM/ECF System for filing.

s/Danette Valencia

F:\Law Offices\client directory\AIAWJ\007\2010 09 29 AIAWJ-007.complaint.pld.wpd

14